(April 16, 1996)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES CARVEY, Appellant. [640 NYS2d 542] —Judgment, Supreme Court, New York County (Dorothy Cropper, J.), rendered November 24, 1993, convicting defendant, upon his plea of guilty, of attempted criminal possession of a weapon in the third degree, and sentencing him, as a persistent felony offender, to a term of 2 years to life, affirmed.

The initial stop of the vehicle in which the defendant was traveling, based upon the absence of a rear license plate, was entirely proper (*People v Diaz*, 213 AD2d 270, *lv denied* 85 NY2d 972; *see, People v Castro*, 129 AD2d 406, *affd* 70 NY2d 943). The observation, by one of the police officers involved, of the defendant's bulletproof vest beneath the open collar of his shirt in combination with his furtive motion of bending to place an object beneath the seat, clearly provided the officers with sufficient justification to order the occupants out of the car for a protective frisk (*People v Batista*, 216 AD2d 174, 175; *People v Gil*, 211 AD2d 99, 102, *lv granted* 86 NY2d 744). While the wearing of a bulletproof vest is not in and of itself a crime, it is a strong indication that the wearer is armed (*cf., People v Heath*, 203 AD2d 17, 18, *affd* 86 NY2d 723). It has been stated that the "whole purpose of the wearing of the vest is to make it more feasible to go armed, to enhance the advantage of doing so, and so to further the commission of the crime of criminal possession of a weapon" (*People v Heath, supra*, at 19). The Legislature has also recognized that a bulletproof vest is employed by individuals to enhance their ability to commit armed crimes (*see*, Penal Law § 270.20).

The act of bending to place something beneath a car seat is certainly, in and of itself, an innocuous gesture. However, that gesture, in combination with the wearing of a bulletproof vest, under the circumstances herein, cannot reasonably be interpreted as innocent. Discrete analysis of each factor is inappropriate as the officers are confronted with only the complete

set of circumstances. Thus, to safeguard his own safety and that of his fellow officers, it was also appropriate for the officer in question to reach to the location in the vehicle toward which defendant had bent, in order to determine if defendant had secreted a weapon there.

The Court of Appeals in *People v Torres* (74 NY2d 224) suppressed the weapon found by officers in a nylon bag taken out of the vehicle from which defendant alighted, but recognized that "there may well be circumstances where, following a lawful stop, facts revealed during a proper inquiry or other information gathered during the course of the encounter lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officers' safety sufficient to justify a further intrusion, notwithstanding the suspect's inability to gain immediate access to that weapon" (74 NY2d, *supra*, at 231, n 4). In *Torres* (*supra*), the officers were operating pursuant to an anonymous tip and approached the suspect vehicle with guns drawn. The weapon was left in a zippered nylon bag in the vehicle in question after the defendant and the other occupant were removed and frisked. In this case, the circumstances presented an actual and greater threat to the officers' safety; the officers were outnumbered by the occupants, there was no evidence that the officers approached the vehicle with their guns drawn and the weapon in question was left just under the seat and not in another closed container such as a zippered nylon bag. Concur—Sullivan, Wallach, Kupferman and Ross, JJ.

Murphy, P. J., dissents in a memorandum as follows: I respectfully dissent. Initially, I must record my doubt that defendant's actions in this case—wearing a bulletproof vest and bending forward in the back seat of a car as if he was "placing something under the seat with his right hand"—constituted conduct justifying defendant's removal from the vehicle and frisk. In itself, the wearing of such a vestment is not prohibited under the laws of this State; the circumstances of the vehicle stop in this case provided no discernible cause for belief that defendant had committed or was committing a criminal act; defendant's gesture was innocuous on its face, albeit not ultimately innocent in fact.

However, we need not resolve the propriety of the stop and frisk to decide the appeal. Once removed from the vehicle and frisked, defendant no longer posed a potential danger to the police. Therefore, under current law, the subsequent search of the automobile was without probable cause and was inconsistent with the privacy rights guaranteed by the State Constitu-

tion (NY Const, art I, § 12; *People v Torres*, 74 NY2d 224, 227-231 [1989]; *People v Theodis*, 155 AD2d 339 [1st Dept 1989], *lv denied* 75 NY2d 872 [1990]). The People's claim that permitting defendant to return to the unsearched vehicle would be dangerous was properly rejected as farfetched and insufficient in *Torres* (74 NY2d, *supra*, at 230-231), and need not be revisited here. Such a rationale for a vehicle search would invite a broad and unwarranted extension of the "stop and frisk" doctrine.

Furthermore, I disagree with the majority's finding that the circumstances of this case presented "an actual and greater threat to the officers' safety" than the situation faced by the police in *Torres*. Following the frisk of the defendant and his colleagues, three armed officers faced four unarmed civilians outside the vehicle; that they were "outnumbered" under these circumstances provides little justification for a vehicle search. Likewise, the fact that "there was no evidence that the officers approached the vehicle with their guns drawn" in this matter is irrelevant to an assessment of the officers' conduct after the frisk. Finally, I cannot agree that the facts of this case posed a greater threat to the police than that faced by the investigating officers in *Torres*.

In sum, the majority's decision today establishes that the wearing of a bulletproof vest permits an inference of criminal activity which, together with an inoffensive gesture, provides police with authority both to frisk individuals and to search their vehicles. I believe that this conclusion is contrary to the Fourth Amendment.

Accordingly, the judgment of the Supreme Court, New York County (Dorothy Cropper, J.), rendered November 24, 1993, convicting defendant, upon his guilty plea, of attempted criminal possession of a weapon in the third degree, should be reversed, the motion to suppress granted and the indictment dismissed.